# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

ROLAND ALEXIS WHITE, II                    CIVIL ACTION NO. 20-917-P

VERSUS                                     JUDGE HICKS

SGT. PORTER, ET AL.                        MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Roland Alexis White, II. ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on July 15, 2020. Plaintiff claims his civil rights were violated by prison officials while incarcerated at the Bossier Maximum Security Center in Plain Dealing, Louisiana. He names Sgt. Porter, Sgt. Evans, A. Lopez, Sgt. K. Pease, S. Gill, Valerie Everette, Deputy Malone, L. Lyles, Woda, Sgt. Bascoe, Nurse Cindy, Nurse Trisha, Ms. Avery, Jane Doe 1, Jane Doe 2, Jane Doe 3, John Doe 1, John Doe 2, and Unknown Correctional Officers as defendants.

On June 28, 2020, Deputy A. Lopez placed Plaintiff in segregation. Lopez accused him of asking her if she had reconsidered his dark meat offer. Plaintiff denies making this statement and claims there is no evidence or witness to support the charge. Plaintiff admits that on June 23, 2020, he asked Lopez if she liked dark meat. He claims Lopez entertained

the playful comment and responded that she was married to a Mexican. He claims Lopez did not write him up for the incident, but he was given several charges for the incident.

Plaintiff claims that while in segregation, all his property except for his hygiene items was taken from him. He also claims all his privileges were taken from him including telephone, commissary, and kiosk messaging due to his pre-hearing status of pending D-seg. He claims he was placed in a cell that was covered in urine and vomit. He claims the bedding area was stained and smelled of urine. He claims he was not allowed to clean the cell or be placed in a different cell for an entire day and night.

On the following day, Plaintiff appeared before Sgt. Evans for a disciplinary hearing. He claims he was not given prior notice of the hearing or the charges against him. He claims he was offered 15 days D-seg and credit for the one day served for the offense of disrespect. He claims the rule book states that this infraction should be punished with only 5 days D-seg. Plaintiff claims another inmate was not given D-seg time for allegedly exposing himself to the same deputy.

Plaintiff then proceeded to the second step. He claims the rule book states the second step is to occur within 72 hours of the request, but his second step did not occur until July 7, 2020, which was nine days later. Plaintiff was held in segregation on pending D-seg status while waiting the second step. He claims that while in segregation he was denied access to the commissary, telephone, kiosk messaging, and video call privileges.

Plaintiff appeared before Lt. Porter for his disciplinary hearing. He claims Porter did not care about his testimony, the lack of evidence against him, and the excessiveness of his sentence. He claims his witnesses were not questioned in his presence. Plaintiff was

found guilty of two counts of inappropriate behavior (disrespect) and one count of interfering with census. Porter sentenced Plaintiff to a total of 15 days (5 days for each count) with no credit for time served. He claims his sentence was shortened to eight days because he filed a kite regarding inmate Stanley Colquitt's lesser sentence for worse behavior.

Plaintiff claims that for the next seven days, his mattress was taken from him between the hours of 6:00 a.m. and 6:00 p.m. He claims he had pain in his right shoulder and mid-back area because he attempted to sleep on steel and concrete.

Plaintiff believes the deputies are discriminating against him because of his time served in 2013 and 2014 and because he won on his previous charges. He claims officers have been aggressive toward him and he has not been given trustee status.

The remaining claims of Plaintiff occurred after he filed this action in this court on July 15, 2020. On July 18, 2020, Plaintiff had an altercation with several inmates. He informed Sgt. Pease that he was not safe in the pod and needed to be moved. He claims Pease informed him that if he was removed from the pod, he would be placed in the segregation unit. Plaintiff agreed to the transfer and Pease informed him that he would be transferred after dinner. He claims he was labeled a snitch and a coward because he requested to be transferred. He claims word spread through the jail and he was made aware that he would be "gotten." He claims he was never transferred from the pod.

Plaintiff claims that during the evening medical pass, the doors in the unit were opened. He claims several inmates threatened him. He claims he did not exit his cell but was locked down for evening recreation for exiting his cell.

Plaintiff claims that on the following day, an inmate entered his cell during evening recreation, and they fought. He claims he suffered swollen knots on his forehead and temple area, a swollen, bleeding nose that may have been broken, and a swollen and sore neck from the inmate's attempt to choke him.

Plaintiff claims that on July 16, 2020, he wrote the medical staff regarding a rash on his face and requesting to be weighed. He claims the next morning, he saw Jane Doe #1 and she prescribed hydrocortisone cream for his face and measured his weight at 150 pounds and his height at 6'2". Plaintiff claims he has been incarcerated since June 6, 2020 and weighed more than 170 pounds prior to his incarceration. He claims he requested a double portion diet because he was very underweight. He claims Jane Doe #1 denied him a double portion diet but agreed to weigh him for the next few weeks. Plaintiff ordered two large commissary orders. He claims that when he was weighed the week of July 19, 2020, he had only gained one pound. He claims the next week he weighed 152 pounds. He claims John Doe #1 disregarded the fact that he was eating extra food from the commissary and was still underweight and not gaining a meaningful amount of weight. He claims John Doe #1 aggressively informed him that he was gaining weight and would not be given double portions.

Plaintiff claims he has H.I.V. and is exposed to more health risks than the average person when underweight. He claims his collar bone, ribs, and hip bone are clearly visible. He claims the medical staff insists he is a healthy weight.

Plaintiff claims that on July 30, 2020, he filed a grievance in the administrative remedy procedure. He claims that shortly after he filed this grievance in the administrative

remedy procedure, the rules were enforced for a short period of time. He claims that the following week, he was sent to see Jane Doe #3 and Lt. Porter to be weighed and measured. He claims he measured 6'3" and 155 pounds. He claims he was told that he would be weighed weekly. He informed them that he would eat the remainder of his commissary order but no more so his weight would accurately reflect the diet provided by the facility. Plaintiff claims that the week of August 9, 2020, he weighed 154 pounds. He claims he told them that he had eaten the last of his commissary order.

Plaintiff claims that on August 13, 2020, he requested an ARP from Sgt. Barnett. He claims Sgt. Barnett responded that he was going to end up in segregation for trying to write ARPs.

Plaintiff claims that the week of August 16, 2020, he weighed 152 pounds.

Plaintiff claims that on August 24, 2020, his cell was searched, and he was placed in segregation on false charges. He claims numerous items were taken as contraband and used to file disciplinary charges against him and his cell mate. Plaintiff claims he was never given a written report of the accusations against him. He claims he was immediately moved to D-seg on pending D-seg status.

Plaintiff claims that while in pending D-seg status, he could not have his own hygiene items, white clothes, and stationary items. He claims other inmates in segregation were allowed their hygiene items. He claims he weighed 150 pounds. Plaintiff claims that while in segregation, he was occasionally given additional food and still only weighed between 150 and 152 pounds. He claims he was denied his writing materials and envelopes. He claims S. Gill intentionally mixed his dirty and clean laundry together,

kicked his box, and spilled his baby oil on his legal pad. He claims he was not allowed to use the phone or send kiosk messages and kites. Plaintiff claims Pease was the supervising sergeant and was aware of what he was being denied.

Plaintiff claims he had no way to access his mother or the state court to file a writ of habeas corpus. He claims that when he went to the law library, he had no paper. He claims Evans told him to write down the page numbers he needed on the back of the log in sheet and he would make copies for him. He claims Evans never made the copies. He claims that he was unable to draft a proper petition for habeas corpus.

Plaintiff claims that on August 26, 2020, Evans informed him that he would not be receiving copies or his hygiene products because they were going to provide him with soap, toothpaste, and a toothbrush. He claims he was allowed to have his whites, pen, and paper. He claims he was also informed that he would not receive envelopes and stamps, but he could send out legal mail that they read first. They told him that they would put the mail in an envelope and stamp it from his property. Plaintiff claims he has not been allowed to go to the law library.

Plaintiff claims that on September 3, 2020, he appeared before Evans for a disciplinary hearing. He claims he was offered his release from segregation if he pleaded guilty to the charges. He claims his property was not returned to him and he was not compensated for it.

Plaintiff claims he was unable to petition for a writ of habeas corpus in the state court concerning his placement in segregation and pending d-seg status because the issue was moot once he was removed from segregation.

Plaintiff claims that the week of August 30, 2020, he weighed 152 pounds. He claims that the week of September 6, 2020, he weighed 150 pounds. He claims he was told that in order to be considered underweight, he had to weigh less than 148 pounds. Plaintiff notes that while in segregation, he was given additional food on several trays and that when he left segregation, he consumed three or four Ramen noodle packets. He also notes that his hair is long and may weigh one or two pounds.

Plaintiff informed the nurses that he wanted to speak to a doctor because he was weak and had pains in his throat and chest. He claims he also informed them that he would no longer deprive himself of commissary food because he felt that he was starving. He claims the nurses informed him that there was no need for him to speak to a doctor because they relay everything to a doctor.

Plaintiff claims that on September 17, 2020, he was taken to Ochsner Hospital for a scheduled appointment. He claims he weighed 158.8 pounds. Plaintiff notes that he was again eating commissary food and was wearing metal restraints that weighed at least three pounds. He requested to speak to a nutritionist, but claims he was told that the nutritionist could not interfere with a prisoner's diet. Plaintiff told them he wanted a recommendation from the nutritionist. He claims the nutritionist informed him that his body mass index was 19 and he was underweight. He claims the nutritionist wrote a letter regarding her recommendations and gave it to the transport officer to give to the medical staff. Plaintiff now receives an eight-ounce bottle of Ensure daily.

Plaintiff claims Porter asked him if he wanted to cancel his ARP since he was receiving Ensure. He told Porter no because he needed more than one Ensure added to his

diet. He claims a few minutes later Porter gave him the second step response to his grievance from Cpt. Boyer which stated his grievance was founded and he would be given a double portion.

Plaintiff claims that on August 4 and August 7 of 2020, magazines of female models in bikinis and lingerie sent to him were returned by Porter and Valerie Everett without notice or opportunity to appeal because they contained partial nudity. Plaintiff claims other magazines with women in bikinis have been allowed as was a book of tattoo drawings that contained drawn images of fully bare breasts and genitals.

Plaintiff claims that on October 16, 2020, Nurse Trisha accused him of calling nurse Cindy a "racist b****" when she was supplying his sunscreen lotion. He claims he did not. Porter then placed him in segregation on false charges of disrespect. He claims he was again placed in pending D-Seg without his property and privileges. He claims the water was off for two and a half days and he had to eat food with dirty hands.

Plaintiff claims that on October 21, 2020, he appeared before Evans without prior notice of the hearing. He claims he was offered ten days D-Seg, but he elected to go to the second step. He claims that on October 23, 2020, he was wrongfully convicted of the disciplinary charges and given ten days D-Seg with credit for time served. He claims he spent October 24, 2020 without his mattress and was released from segregation at midnight on October 26, 2020.

Plaintiff claims his legal mail was copied in his presence. He claims he was given the copies and the originals were kept by officers to be placed in his property.

Plaintiff claims he requested an ARP the week of October 25, 2020 and was told that that he had to request one from Porter by electronic kite explaining why he needed one. He claims that when he requested one from Porter, he responded that the format was incorrect. He claims he was again denied for improper format. He claims that paper forms are not provided for grievances.

Accordingly, Plaintiff seeks compensatory and punitive damages, attorney and court fees, expungement of his disciplinary record, release from jail, and any other damages allowed.

## LAW AND ANALYSIS

### Classification

Plaintiff claims that on June 28, 2020, Deputy A. Lopez placed him in segregation for comments he allegedly made to her, and he was classified as pending D-seg. He claims there was no evidence or witness to support her allegations. Plaintiff also claims he was denied trustee status.

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir.1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir.1983)). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n. 8, 96 S.Ct. 2532, 2540 n. 8 (1976)).

Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Conditions of Confinement Claims**

Plaintiff claims that when he was placed in segregation on June 28, 2020, he was deprived of all his property except his hygiene items. He claims he also lost his privileges which included telephone, commissary, and kiosk messaging due to his prehearing status of pending D-seg. He also claims he was placed in a cell that was covered in urine and vomit for an entire day and night. He claims the bedding area was stained and smelled of urine. He claims he was not allowed to clean his cell.

Plaintiff filed this complaint pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement,

ensuring that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee safety of inmates.  See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components.  See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).  First, the deprivation alleged must be sufficiently serious.  See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).  Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.  However, mere neglect and/or negligence do not constitute deliberate indifference.  See Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1997).

Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement.  Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

### Telephone and Video Call Privileges

Plaintiff claims that while he was in segregation beginning on June 28, 2020, he was denied telephone and video call privileges.  Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id.  Plaintiff was in

segregation for approximately 16 days without telephone and video call privileges.  He does not allege that he was unable to communicate through written correspondences during this time.

Furthermore, Prisoners have "'no right to unlimited telephone use.' Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" Waganfeald v. Gusman, 674 F.3d 475 (5th Cir. 2012) (quoting Douglas v. Gusman, 567 F.Supp.2d 877, 886 (E.D. La. 2008)); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994); Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).  "Prisons legitimately impose a variety of restrictions on inmates' use of telephones." Roy v. Stanley, No. 02-CV-555-JD, 2005 U.S. Dist. LEXIS 20644, 2005 WL 2290276, at 7 (D.N.H. Sept. 20, 2005) (citing United States v. Lewis, 406 F.3d 11, 13 (1st Cir. 2005); Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997); Spurlock v. Simmons, 88 F.Supp.2d 1189, 1193 (D. Kan. 2000)).

Prison regulations concerning telephone use do not violate an inmate's First Amendment rights so long as the inmate does not suffer from an inability to communicate with the courts, counsel, family, and friends. Hill v. Estelle, 537 F.2d 214, 215 (5th Cir.1976).  Plaintiff has not made claims regarding the inability to communicate with the courts, counsel, family, or friends.

Accordingly, Plaintiff's claims regarding telephone and video call use are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Commissary Privileges**

Plaintiff claims he was denied commissary privileges while housed in segregation beginning on June 28, 2020.  Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id.  Plaintiff was in segregation for approximately 16 days without commissary privileges.  There is no constitutional right for a prisoner to be able to purchase items from a commissary.  Patin v. LeBlanc, 2012 U.S. Dist. LEXIS 106300, 2012 WL 3109402 (citing Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); Harrison v. Federal Bureau of Prisons, 611 F.Supp.2d 54, 62 (D.D.C. 2009) ("It is established that an inmate has no federal constitutional right to purchase items from a prison commissary."); Hopkins v. Keefe Commissary Network Sales, No. 07-745, 2007 U.S. Dist. LEXIS 99140, 2007 WL 2080480, at 5 (W.D. Pa. Jul. 12, 2007).

Accordingly, Plaintiff's claims regarding the denial of commissary privileges are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Kiosk Privileges**

Plaintiff claims that while in segregation he was denied kiosk privileges.  Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id.  Plaintiff was in segregation for approximately 16 days without kiosk privileges.  Plaintiff does not allege in his complaint or amended complaint that he was unable to communicate with the administration verbally or through written communication while in d-segregation for this period beginning on June 28, 2020.

Accordingly, Plaintiff's claims regarding the denial of kiosk privileges are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Lack of Mattress**

Plaintiff claims that for seven days following July 7, 2020, he was denied his mattress between the hours of 6:00 a.m. and 6:00 p.m.   He claims he suffered pain in his right shoulder and mid-back area because he attempted to sleep on steel and concrete. Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id.   First, bedding is a matter committed to the sound discretion of prison administrators.  Kot v. Matty, No. 90–7644, 1991 WL 246906, (E.D. Pa. Nov. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).  Federal courts have held in recent years that the deprivation of bedding for a limited period is not per se unconstitutional.  See Grissom v. Davis, 55 Fed. Appx. 756, 758 (6th Cir. 2003) (seven days without a mattress, sheets or blanket is not a deprivation of basic human needs); O'Leary v. Iowa State Men's

Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping with no mattress or blanket for four days on a concrete slab in cell located 10 feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer–Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in a strip cell without clothes, running water, mattress or blanket for two days not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional). McAllister v. Strain, CIV.A. 08-5174, 2009 WL 500560, (E.D. La. Feb. 25, 2009). Furthermore, Plaintiff admits he had his mattress between the hours of 6:00 pm and 6:00 am. The Constitution does not mandate that he also have a mattress outside of ordinary sleep periods.

"The conditions described by plaintiff, while plainly nor comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation." Green v. Gusman, 15-1738, 2016 WL 3033541, (E.D. La. May 6, 2016). The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Id. (citing Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982)). The courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Id. Thus, Plaintiff's claim has failed to satisfy the first component of an Eighth Amendment claim.

Accordingly, Plaintiff's claim regarding the lack of a mattress should be dismissed with prejudice as frivolous.

### Dirty Cell

Plaintiff claims that he was placed in a cell that was covered in urine and vomit. He claims the bedding area was stained and smelled of urine. He claims for the entire day and night he was not allowed to clean his cell or be placed in a different cell.

As previously discussed, the Constitution "does not mandate comfortable prisons," but conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 2399–400, 69 L.Ed.2d 59 (1981). Prison officials must provide humane conditions of confinement, ensuring that "inmates receive adequate food, clothing, shelter, and medical care...." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).

Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id. In Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Court stated that a filthy, overcrowded cell might be tolerable for a few days but intolerably cruel for weeks or months. The Fifth Circuit found that inmates kept in a filthy cell for only three days did not make out a violation. Davis v. Scott, 157 F.3d 1003 (5th Cir.1998).

The conditions alleged by Plaintiff would have been undesirable and perhaps uncomfortable, but they do not reflect inhumane conditions of confinement by which prison officials wantonly and unnecessarily inflicted pain by denying the minimal measure of life's necessities.

Accordingly, Plaintiff's claim regarding a dirty cell for a day and night should be dismissed with prejudice as frivolous.

**Disciplinary Proceedings**

Plaintiff appeared before Sgt. Evans for a disciplinary proceeding. He claims he was not given prior notice of the hearing or the charges against him. He claims he was offered 15 days D-seg and credit for the one day served for the offense of disrespect. Plaintiff opted to proceed to the second step. He claims his hearing did not occur until July 7, 2020 which was after the 72 hour period set out in the rule book. He claims he appeared before Lt. Porter who did not care about his testimony, the lack of evidence against him, and the excessiveness of his sentence. He also claims the witnesses were not questioned in his presence. Plaintiff was convicted of two counts of inappropriate behavior and one count of interfering with census. He was sentenced to 15 days (5 days for each count) with no credit for time served. He claims his sentence was then shortened to eight days.

To the extent Plaintiff contends he was punished without due process, that claim is not cognizable. In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431. Under the guidance

provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest.  Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).  Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary action affected the duration of his sentence. To the contrary, Plaintiff's allegations concern the placement in segregation and the loss of privileges which is far from "extraordinary."  This court finds that under Sandin, Orellana, and Madison, sanctions of segregation and the resulting loss of privileges do not constitute the type of atypical punishments that presents a significant deprivation which would implicate due process concerns.

Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Discrimination**

Plaintiff believes deputies are discriminating against him because of his prior incarcerations in 2013 and 2014 and because he won on his previous charges.  To the extent Plaintiff contends he was denied equal protection, that claim is not cognizable.  First, Plaintiff does not contend that he was discriminated against based on race, sex or other suspect basis that is afforded a greater degree of protection under the Equal

Protection Clause.  To demonstrate an equal protection claim in such a setting, a prisoner must show the existence of purposeful discrimination motivating the state action which caused the complained-of injury.  Stevenson v. Louisiana Board of Parole, 265 F.3d 1060 (5th Cir.2001).  A mere claim that prison officials reached different results with respect to decisions made regarding different prisoners does not give rise to an equal protection claim. Id.; Thompson v. Patteson, 985 F.2d 202, 207 (5th Cir.1993).  Plaintiff has not satisfied his burden with respect to the purposeful discrimination or causation elements.

Accordingly, Plaintiff's claims that he was discriminated against are without merit and should be dismissed with prejudice as frivolous.

**Exhaustion of Administrative Remedies**

Plaintiff makes numerous claims that occurred after he filed his complaint on July 15, 2020.  These claims include failure to protect, false disciplinary charges, denial of medical care, inadequate diet, inadequate administrative remedy process, classification, confiscation and destruction of property, denial of privileges, denial of access to the courts, denial of magazines for partial nudity, conditions of confinement, and tampering with his legal mail.

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).  Section 1997e requires Plaintiff to properly

exhaust available administrative remedies before filing a Section 1983 suit. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). This exhaustion requirement requires proper exhaustion of administrative remedies in accordance with prison procedures, and an untimely or otherwise procedurally defective grievance or appeal will not suffice. Woodford, 126 S.Ct. 2378. The Fifth Circuit has applied the requirement to claims such as the use of excessive force, see Wendell, 162 F.3d at 887, and denial of medical care. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999). Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, dismissal may be appropriate when, the complaint on its face establishes the inmate's failure to exhaust. See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

After reviewing Plaintiff's complaint, the court finds Plaintiff has failed to properly exhaust administrative remedies as to these claims. Plaintiff filed his complaint on July 15, 2020 and the complained of incidents did not occur until after July 15, 2020. Plaintiff therefore could not have exhausted administrative remedies as to these claims prior to filing this complaint.

Accordingly, it is recommended that these claims be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**Habeas Claims**

To the extent that Plaintiff seeks to have his conviction and sentence overturned and his release from incarceration, his claims should be dismissed. A release from custody is

not available through a civil rights action. See Calderon v. Ashmus, 523 U.S. 740, 747 (1998) (any claim attacking the validity or duration of confinement must be raised in a habeas corpus petition); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Such relief is available, if at all, in a habeas corpus action under 28 U.S.C. § 2254(a). To the extent Plaintiff seeks the dismissal of the conviction and sentence and his release from incarceration, he fails to state a claim for which relief may be granted pursuant to 42 U.S.C. § 1983.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims that occurred before July 15, 2020 be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii)

and his claims occurring after July 15, 2020 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 15th day of August, 2023.

_____
Mark L. Hornsby
U.S. Magistrate Judge